**No. 26-50016**

In The
# United States Court of Appeals
For the Fifth Circuit

## ANGELICA OLIVAS,
*Plaintiff–Appellant*

## V.

## CITY OF MIDLAND,
*Defendant–Appellee*

On Appeal from the United States District Court
for the Western District of Texas—Midland/Odessa Division

# BRIEF OF APPELLANT

**Lane A. Haygood**
Texas State Bar Number: 24066670
HAYGOOD LAW FIRM
620 N. Grant Ave., Suite 913
Odessa, Texas 79761
Tel: 432.279.0411
Fax: 432.225.1062
lane@haygoodlawfirm.com
*Attorney for the Plaintiff–Appellant, Angelica Olivas*

## ORAL ARGUMENT REQUESTED

## Certificate of Interested Persons

**ANGELICA OLIVAS,**
Plaintiff–Appellant

    v.  No. 26-50016 (5th Cir.) / No. 7:25-CV-00081-DC-RCG (W.D. Tex.)

**CITY OF MIDLAND,**
Defendant–Appellee

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

**Parties:**
- Angelica Olivas, Plaintiff–Appellant
- City of Midland, Texas, Defendant–Appellee

**Counsel for Plaintiff–Appellant:**
- Lane A. Haygood, Haygood Law Firm (appellate counsel)
- Steve Hershberger, Steve Hershberger, Attorney at Law (trial counsel)

**Counsel for Defendant–Appellee:**
- Aaron M. Dorfner, Cotton, Bledsoe, Tighe & Dawson, P.C.
- Monique R. Wimberly, Cotton, Bledsoe, Tighe & Dawson, P.C.

i

**Judicial Officers:**
- Hon. David Counts, United States District Judge
- Hon. Ronald C. Griffin, United States Magistrate Judge

/s/ Lane A. Haygood
**Lane A. Haygood**
Attorney for Plaintiff–Appellant

## Statement Regarding Oral Argument

Oral argument would meaningfully aid the Court's decisional process. This appeal presents two questions of recurring importance in employment-discrimination practice: (1) the scope of administrative exhaustion under the ADA where an EEOC charge expressly alleges retaliation but does not recite a particular triggering incident with formulaic specificity, and (2) the level of factual detail Rule 12(b)(6) demands of an ADA retaliation pleading where temporal proximity is alleged. The application of plain-error review to a Rule 12(b)(6) dismissal also raises questions about how an appellate court should evaluate facially erroneous legal rulings under the framework of *Douglass v. United Services Automobile Ass'n*.

## Table of Contents

Certificate of Interested Persons ...............................................I

Statement Regarding Oral Argument ......................................III

Table of Contents...............................................................IV

Table of Authorities ...........................................................V

Statement of Jurisdiction ..................................................1

Statement of the Issue .....................................................2

Statement of the Case .....................................................3

    Course of Proceedings and Disposition Below ...................................3

    General Statement of Facts.................................................5

Summary of the Argument ...................................................8

Argument ...................................................................10

    Standard of Review.......................................................10

    Argument & Authorities..................................................11

    1.    Appellant exhausted administrative remedies as to her ADA retaliation claim. ......................................................................11

    2.    The complaint plausibly states a claim for ADA retaliation. ................16

Conclusion ..................................................................22

Certificate of Service.......................................................23

Certificate of Compliance ..................................................24

# Table of Authorities

**United States Supreme Court Cases**

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ............................................................. 17

*Bell Atlantic Corp. v. Twombly*,
 550 U.S. 544 (2007) ............................................................. 17

*Molina-Martinez v. United States*,
 578 U.S. 189 (2016) ............................................................. 11

*Swierkiewicz v. Sorema N.A.*,
 534 U.S. 506 (2002) .......................................................passim

*United States v. Olano*,
 507 U.S. 725 (1993) ................................................. 10, 11, 15

**United States Courts of Appeals Cases**

*Cicalese v. Univ. of Tex. Med. Branch*,
 924 F.3d 762 (5th Cir. 2019)................................................16, 20, 21

*Dao v. Auchan Hypermarket*,
 96 F.3d 787 (5th Cir. 1996) ................................................. 15

*Douglass v. United Servs. Auto. Ass'n*,
 79 F.3d 1415 (5th Cir. 1996)................................................10

*Gee v. Principi*,
 289 F.3d 342 (5th Cir. 2002) ................................................. 19, 21

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*,
 313 F.3d 305 (5th Cir. 2002)................................................ 21

*Jenkins v. Cleco Power, LLC*,
 487 F.3d 309 (5th Cir. 2007) ................................................. 13, 18, 21

*Jennings v. Towers Watson*,
  11 F.4th 335 (5th Cir. 2021) ....................................................8, 14, 15

*Lyons v. Katy Indep. Sch. Dist.*,
  924 F.3d 298 (5th Cir. 2020) ........................................................ 19, 21

*McClain v. Lufkin Indus., Inc.*,
  519 F.3d 264 (5th Cir. 2008) .............................................................. 11

*Pacheco v. Mineta*,
  448 F.3d 783 (5th Cir. 2006) ....................................................passim

*Sanchez v. Standard Brands, Inc.*,
  431 F.2d 455 (5th Cir. 1970) ....................................................12, 15

*Seaman v. CSPH, Inc.*,
  179 F.3d 297 (5th Cir. 1999) .............................................................16

*Stokes v. Gann*,
  498 F.3d 483 (5th Cir. 2007) .............................................................16

*Strong v. Univ. Healthcare Sys., LLC*,
  482 F.3d 802 (5th Cir. 2007) ........................................................ 19, 21

*Swanson v. Gen. Servs. Admin.*,
  110 F.3d 1180 (5th Cir. 1997) ...................................................... 19, 21

*Taylor v. Books a Million, Inc.*,
  296 F.3d 376 (5th Cir 2002) ............................................................. 15

## United States District Court Cases

*Milteer v. Navarro Cnty.*,
  652 F. Supp. 3d 754 (N.D. Tex. 2023)...............................................18

*Sambrano v. United Airlines, Inc.*,
  707 F. Supp. 3d 652 (N.D. Tex. 2023)...............................................14

## Statutes

28 U.S.C. § 636...................................................................................10

42 U.S.C. § 12117.......................................................................................... 11

42 U.S.C. § 1983 .............................................................................................3

42 U.S.C. § 2000e-5 ....................................................................................... 15

**Rules**

Federal Rule of Civil Procedure 12(b) ........................................................... 4, 9, 10

Federal Rule of Civil Procedure 8 ......................................................................... 21

## Statement of Jurisdiction

The district court had federal-question jurisdiction over Appellant's claims under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, pursuant to 28 U.S.C. § 1331. The district court entered Final Judgment dismissing all claims with prejudice on November 18, 2025.[1] The district court granted Appellant's unopposed motion to extend the time to file her notice of appeal under Federal Rule of Appellate Procedure 4(a)(5), extending the deadline to January 5, 2026.[2] Appellant timely filed her notice of appeal on January 5, 2026.[3] This Court has jurisdiction under 28 U.S.C. § 1291.

---

[1]ROA.108.

[2]Text Order entered Dec. 19, 2025; ROA.109–112.

[3]ROA.113–114.

1

## Statement of the Issue

**ISSUE ONE:** Whether the district court committed plain error in dismissing Appellant's ADA retaliation claim: first, on the ground that her EEOC charge, which expressly alleged she was "terminated in retaliation because [she] complained of discrimination" stemming from her disability, failed to exhaust administrative remedies; and second, on the ground that her complaint, which alleged a request for accommodations followed a few days later by termination, failed to plausibly state a claim for relief.

## STATEMENT OF THE CASE

**Course of Proceedings and Disposition Below**

Angelica Olivas filed this employment-discrimination action against the City of Midland, Texas in the United States District Court for the Western District of Texas, Midland/Odessa Division, on February 20, 2025.[4] The complaint pleaded three causes of action arising out of Olivas's August 22, 2023 termination from her position as Laboratory Manager: (1) hostile work environment under the Americans with Disabilities Act; (2) retaliation under the ADA; and (3) deprivation of property and liberty interests under 42 U.S.C. § 1983.[5]

On May 15, 2025, the City moved to dismiss the hostile-work-environment and § 1983 claims under Federal Rule of Civil Procedure 12(b)(6).[6] The City did not initially address the ADA retaliation claim. After full briefing,[7] the magistrate judge issued a Report and Recommendation on July 24, 2025, that treated the complaint as raising only two claims and recommended dismissal of both with prejudice.[8] No

---

[4]ROA.4–9.
[5]ROA.6–8.
[6]ROA.17–27.
[7]ROA.28–33; ROA.35–41.
[8]ROA.45–56.

party filed objections, and the district court adopted the Report and Recommendation on August 11, 2025.[9]

On August 12, 2025, the district court entered an Order of Clarification recognizing that the complaint contained a third cause of action—ADA retaliation—that the City's first motion had not addressed, and ordered the City either to file a second motion to dismiss or to file an answer.[10] The City elected to file a Second Motion to Dismiss the retaliation claim on August 25, 2025.[11] After full briefing,[12] the magistrate judge issued a second Report and Recommendation on November 3, 2025 recommending dismissal of the retaliation claim with prejudice on alternative grounds: (1) failure to exhaust administrative remedies, and (2) failure to state a claim under Rule 12(b)(6).[13]

No party filed objections to the second Report and Recommendation. The district court adopted the Report and Recommendation and entered Final Judgment on November 18, 2025, dismissing all claims with prejudice and closing the case.[14] Appellant timely filed her notice of appeal.

---

[9]ROA.57–58.

[10]ROA.59–60.

[11]ROA.61–70.

[12]ROA.81–86; ROA.88–91.

[13]ROA.92–105.

[14]ROA.108.

**General Statement of Facts**

Angelica Olivas began her employment with the City of Midland on May 20, 2013 as a Laboratory Technician.[15] She rose to the position of Laboratory Manager and held that position until her termination on August 22, 2023.[16] Her immediate supervisor at the time of termination was Carl Craigo.[17]

Prior to her termination, Olivas was diagnosed with two disabilities by her health-care providers: Hashimoto's disease, a chronic thyroid disorder, and a mental-health condition.[18] Both conditions limited or negatively disturbed her normal daily activities.[19] With reasonable accommodation, however, Olivas was able to perform her regular work assignments.[20]

Olivas requested specific accommodations from her supervisor Craigo, including permission to attend Zoom counseling appointments during her lunch hour.[21] Co-workers—including those Olivas supervised—claimed falsely that she was "hardly" at work for an eight-month period.[22] Olivas advised Craigo that she

---

[15]ROA.5.
[16]Id.
[17]Id.
[18]ROA.5–6.
[19]Id.
[20]Id.
[21]ROA.5–6.
[22]Id.

had either been in attendance or had given advance notice and obtained his permission for any absences.[23] Olivas complained to Craigo about the harassment from co-workers, but Craigo failed to take corrective action.[24]

On August 18, 2023, the City placed Olivas on administrative leave.[25] The complaint alleges that the City did so **after** Olivas requested accommodations for her physical, mental, and medical conditions.[26] Four days later, on August 22, 2023, the City terminated Olivas, citing what the complaint alleges were "false claims of excessive absences," a pretext, the complaint alleges, designed to conceal disability-based discrimination and the City's refusal to accommodate.[27]

Olivas timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission and received a Notice of Right to Sue dated December 12, 2024.[28] The narrative section of her Charge stated, in pertinent part:

> On or about August 18, 2023, I was placed on administrative leave after complaining of employment discrimination due to my disability and gender. On or about August 22, 2023, I was terminated in retaliation because I complained of discrimination.

---

[23]Id.

[24]ROA.6.

[25]ROA.6.

[26]Id.

[27]Id.

[28]ROA.5.

[29] The Charge thus expressly used the word "retaliation," expressly alleged that the August 22 termination was retaliatory, and expressly identified disability discrimination as the predicate complained-of conduct.

---

[29]ROA.72.

## Summary of the Argument

This Court should reverse. The dismissal of Olivas's ADA retaliation claim rested on two independent grounds, each of which was plain error.

First, the magistrate judge held that Olivas failed to exhaust administrative remedies because her EEOC Charge described her termination as retaliation for "complain[ing] of discrimination" rather than specifically for "requesting accommodations." That reasoning cannot be squared with *Pacheco v. Mineta*, which forbids exactly this kind of formulaic parsing.[30] The Charge expressly used the word "retaliation," expressly tied retaliation to her termination, and expressly tied her termination to disability-related complaints. Under *Pacheco* and *Jennings v. Towers Watson*, that is enough.[31]

Second, the magistrate judge held in the alternative that the complaint failed to plausibly state a retaliation claim. That holding contradicts settled Fifth Circuit pleading law. Olivas alleged a diagnosed disability (Hashimoto's plus a mental-health condition), a specific accommodation request (lunchtime Zoom counseling), the supervisor to whom she made the request (Craigo), administrative leave imposed *after* the request, and termination only four days later. That is plainly more than

---

[30] *Pacheco v. Mineta*, 448 F.3d 783, 789, 792 (5th Cir. 2006).
[31] *Jennings v. Towers Watson*, 11 F.4th 335, 342–44 (5th Cir. 2021).

enough to plead protected activity, adverse action, and a causal connection at the Rule 12(b)(6) stage. *Swierkiewicz v. Sorema N.A.* forecloses any requirement that a plaintiff plead a prima facie case.[32]

Both errors are plain. Both affected substantial rights—Olivas's only remaining claim was dismissed *with prejudice*, foreclosing all relief. And both implicate the fairness, integrity, and public reputation of judicial proceedings: when an employee who timely files an EEOC charge expressly alleging retaliatory discharge cannot get past Rule 12(b)(6), Congress's anti-retaliation guarantee is rendered illusory at the pleading stage.

---

[32] *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511–12 (2002).

# ARGUMENT

**ISSUE ONE:**      **The district court committed plain error in dismissing Appellant's ADA retaliation claim.**

## Standard of Review

Appellant acknowledges that no objections were filed to either Report and Recommendation. Under *Douglass v. United Services Automobile Ass'n*, a party who fails to file written objections to a magistrate judge's findings and recommendations within the time provided by 28 U.S.C. § 636(b)(1) is barred ("except upon grounds of plain error") from attacking on appeal the unobjected-to legal conclusions and factual findings accepted by the district judge.[33] Both the exhaustion ruling and the alternative Rule 12(b)(6) ruling are subject to plain-error review under *Douglass*.

Plain error requires four showings: (1) error; (2) that is plain; (3) that affects substantial rights; and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings.[34] Plain-error review is not toothless. The Supreme Court has cautioned against treating it as a "rigid and undeviating judicially declared practice under which courts of review exercise their power" only in

---

[33] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc); *see also* 28 U.S.C. § 636(b)(1).

[34] *United States v. Olano*, 507 U.S. 725, 732 (1993).

extreme cases.[35] Where, as here, a district court's ruling contradicts well-established circuit and Supreme Court precedent, the error meets all four *Olano* prongs.

**Argument & Authorities**

### 1. Appellant exhausted administrative remedies as to her ADA retaliation claim.

Olivas's EEOC Charge unambiguously exhausts her retaliation claim. The Charge expressly used the word "retaliation." It expressly alleged that her termination was retaliatory. And it expressly tied that retaliation to her having complained of disability discrimination. The magistrate judge's contrary holding rests on a hyper-technical distinction between "complaining of discrimination" and "requesting accommodations" that cannot be reconciled with this Court's precedent.

The governing standard is well settled. To exhaust an ADA claim, a plaintiff must file a timely charge with the EEOC and receive a right-to-sue letter.[36] It is undisputed that Olivas did both. The only question is whether the substance of her Charge encompasses the retaliation claim pleaded in her complaint.

---

[35] *Molina-Martinez v. United States*, 578 U.S. 189, 198 (2016) (cleaned up).

[36] 42 U.S.C. § 12117(a) (incorporating Title VII's procedural framework); *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008).

On that question, this Court's precedent is unambiguous. EEOC charges must be construed *broadly*, "not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation . . . that 'can reasonably be expected to grow out of the charge.'"[37] Courts engage in "fact-intensive analysis . . . look[ing] slightly beyond [the charge's] four corners, to its substance rather than its label."[38] Most importantly for present purposes: this Court "does not require that a Title VII plaintiff check a certain box or recite a specific incantation to exhaust [her] administrative remedies."[39]

Olivas's Charge satisfies that standard with room to spare. The narrative section reads:

> On or about August 18, 2023, I was placed on administrative leave after complaining of employment discrimination due to my disability and gender. On or about August 22, 2023, I was terminated in retaliation because I complained of discrimination.

Four facts appear on the face of the Charge: (1) the word "retaliation" is used expressly; (2) the termination itself is alleged to have been retaliatory; (3) the retaliation is tied to her having complained of discrimination; and (4) the underlying discrimination is identified as based on her disability. An EEOC investigator

---

[37] *Pacheco*, 448 F.3d at 789 (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)).

[38] *Id.*

[39] *Id.* at 792.

presented with this Charge would necessarily ask: *what* complaints of discrimination, and *what* conduct constituted the retaliation? The answer (that Olivas requested disability accommodations and was placed on leave and terminated within days) is precisely the inquiry the Charge invites and would "reasonably be expected to grow out of" the investigation.[40]

The magistrate judge nonetheless concluded that the Charge did not exhaust a retaliation claim premised on Olivas's accommodation request because the Charge spoke of "complain[ing] of discrimination" rather than "requesting accommodations." That distinction is exactly the kind of "specific incantation" requirement *Pacheco* forbade. It is also wrong on the merits, for three reasons.

First, the distinction between "complaining of discrimination" and requesting a disability accommodation is too fine to support dismissal at the exhaustion stage. The ADA treats the failure to make reasonable accommodations as a form of discrimination.[41] This Court has long recognized that requesting an accommodation is itself protected activity for purposes of an ADA retaliation claim.[42] Thus, an EEOC charge alleging retaliation for disability-related complaints

---

[40]*Pacheco*, 448 F.3d at 789.

[41]42 U.S.C. § 12112(b)(5)(A) (defining discrimination to include "not making reasonable accommodations").

[42]*Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 317 (5th Cir. 2007).

would reasonably prompt inquiry into whether the employee requested accommodations and whether the employer retaliated in response. This is all *Pacheco* requires.

Second, the magistrate judge's reasoning conflicts with the very district-court authority on which the Report and Recommendation relied. The magistrate cited *Sambrano v. United Airlines, Inc.* for the principle that "whether a claim is beyond the scope of an employee's EEOC charge depends on whether the claim arises from facts alleged in the charge."[43] *Sambrano* held that a retaliation claim was exhausted because it grew from the same factual allegations as the failure-to-accommodate claim in the charge.[44] The same is true here. Olivas's Charge and her complaint concern the same termination, on the same date, by the same employer, for the same conduct (requesting disability-related accommodations and complaining of disability discrimination). *Sambrano*'s logic confirms exhaustion.

Third, *Jennings v. Towers Watson* is on point. There, this Court reversed a district court that had "construed the scope of the investigation . . . too narrowly" by parsing whether retaliation allegations in the charge encompassed retaliation

---

[43] *Sambrano v. United Airlines, Inc.*, 707 F. Supp. 3d 652, 677 (N.D. Tex. 2023).
[44] *Id.*

theories in the complaint.[45] The Court emphasized that the scope of the investigation includes claims "like or related to" those in the charge.[46] Olivas's complaint is not merely "like or related to" the retaliation alleged in her Charge—it is *the same retaliation*, arising from the same factual nucleus.

The error is *plain*. *Pacheco*, *Sanchez*, and *Jennings* supply the controlling rule. The magistrate's holding required the very "specific incantation" *Pacheco* forbids. Where a district-court ruling departs from clear circuit precedent, the error is plain for purposes of *Olano*.[47]

The error affected substantial rights in the most direct sense available: the dismissal extinguished Olivas's only remaining claim, and did so with prejudice on the rationale that no further charge could now be timely filed.[48] There can be no greater impact on substantial rights than the complete and final loss of a federal cause of action.

---

[45]*Jennings*, 11 F.4th at 344.

[46]*Id.* at 342.

[47]*See Pacheco*, 448 F.3d at 792 ("[W]e do not require that a Title VII plaintiff check a certain box or recite a specific incantation . . . .").

[48]*See Dao v. Auchan Hypermarket*, 96 F.3d 787, 788-89 (5th Cir. 1996) (per curiam); 42 U.S.C. § 12117(a), 42 U.S.C. § 2000e-5(e)(1); *see also Taylor v. Books a Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir 2002) ("Employment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court.").

And the error seriously affects the fairness, integrity, and public reputation of judicial proceedings. The federal anti-retaliation guarantee—applicable to the disabled, to women, to racial minorities, and to whistleblowers alike—depends on meaningful access to court. When a plaintiff who has timely filed a charge expressly alleging retaliatory discharge sees that claim dismissed *with prejudice* on a hyper-technical reading of the charge's wording, the integrity of the statutory scheme suffers. *Pacheco* was decided to prevent precisely this outcome.

## 2. THE COMPLAINT PLAUSIBLY STATES A CLAIM FOR ADA RETALIATION.

Even setting aside the exhaustion error, the alternative Rule 12(b)(6) ruling cannot stand. To plead ADA retaliation, a plaintiff must allege three elements: (1) engagement in protected activity; (2) an adverse employment action; and (3) a causal connection between them.[49] At the pleading stage, this Court accepts all well-pleaded facts as true and construes them in the light most favorable to the plaintiff.[50] The plaintiff is *not* required to plead a prima facie case of discrimination or retaliation.[51] The pleading threshold cannot logically be more demanding than the evidentiary threshold the plaintiff would face at trial.

---

[49]*Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999).

[50]*Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007) (per curiam).

[51]*Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019); *see also Swierkiewicz*, 534 U.S. at 511-12

Olivas's complaint clears each element. The magistrate judge's contrary conclusion required treating allegations that are entirely factual and specific as if they were bare conclusions, and required a *Twombly*[52]/*Iqbal*[53] analysis untethered from *Swierkiewicz*.

### 2.1.    Requesting an accommodation is protected activity.

The complaint pleads that Olivas was diagnosed by health-care providers with two conditions—Hashimoto's disease and a mental-health condition—both of which limited her normal daily activities.[54] It pleads that with reasonable accommodation she could perform her work assignments.[55] It pleads that she made a specific accommodation request to her supervisor Craigo: permission to attend Zoom counseling appointments during her lunch hour.[56] And it pleads that she requested accommodations for her physical, mental, and medical conditions before being placed on administrative leave on August 18, 2023.[57]

---

[52] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).
[53] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).
[54] ROA.5–6.
[55] Id.
[56] Id.
[57] ROA.6.

Requesting an accommodation is protected activity under settled Fifth Circuit law.[58] Olivas's allegations identify (1) the disabilities by name, (2) the accommodation requested with specificity (lunchtime Zoom counseling sessions), (3) the recipient of the request (her direct supervisor, Craigo), and (4) the timing (before August 18, 2023). That is more than enough at the Rule 12(b)(6) stage.

The magistrate judge cited *Milteer v. Navarro County* for the proposition that the accommodation allegations were too conclusory.[59] But *Milteer* is materially distinguishable. There, the court found the complaint deficient because it provided *no* facts about why accommodations were necessary, what specific accommodations were sought, or how requests were handled.[60] Here, the complaint identifies the specific disabling conditions (Hashimoto's and a diagnosed mental-health condition); describes their daily-life impact; identifies a specific accommodation requested (lunchtime Zoom counseling); identifies the supervisor to whom requests were directed; and identifies a clear timeline. The pleading easily exceeds *Milteer*'s minimum.

---

[58] *Jenkins*, 487 F.3d at 317.

[59] *Milteer v. Navarro Cnty.*, 652 F. Supp. 3d 754, 763 n.10 (N.D. Tex. 2023).

[60] *Id.*

2.2.    Olivas suffered an adverse action.

The complaint alleges that Olivas was terminated on August 22, 2023.[61] Termination is the paradigmatic adverse employment action and the magistrate judge did not suggest otherwise.

2.3.    The complaint properly pleads a causal connection.

The complaint pleads a temporal sequence sufficient to support an inference of causation. Specifically, the complaint alleges that the City placed Olivas on administrative leave on August 18, 2023 *after* she requested accommodations, and terminated her four days later on August 22, 2023.[62] The accommodation request therefore necessarily preceded August 18, whether by days or weeks, the request, the placement on leave, and the termination occurred in close succession, with the gap between protected activity and termination at most a small number of days.

This Court has repeatedly held that close temporal proximity may support causation at the prima facie stage of a retaliation claim.[63] A four-day interval between adverse action and protected activity is well within the inner band of cases in which

---

[61]ROA.5–6.

[62]ROA.6.

[63]*Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997); *see also Strong v. Univ. Healthcare Sys., LLC*, 482 F.3d 802, 808 (5th Cir. 2007) ("temporal proximity alone, when very close, can in some instances establish a prima facie case of retaliation"); *Lyons v. Katy Indep. Sch. Dist.*, 924 F.3d 298, 305-06 (5th Cir. 2020); *Gee v. Principi*, 289 F.3d 342, 346 n.3 (5th Cir. 2002).

proximity alone suffices. If a four-month gap satisfies causation at the evidentiary stage, then a four-day gap (or less) plainly satisfies plausibility at the pleading stage. *Swierkiewicz* is dispositive: the pleading standard cannot demand *more* than the evidentiary standard.[64]

The magistrate judge concluded that "[w]ith no timeline or factual allegations provided, the Court is unable to infer a causal connection." That conclusion is incorrect on the face of the complaint. The complaint provides a clear timeline: accommodation request → administrative leave on August 18 → termination on August 22. The fact that the complaint does not pinpoint the exact calendar date of the accommodation request does not deprive the pleading of its temporal anchor. The complaint pleads that the leave came *after* the request and the termination came four days after the leave. That is a timeline. And construed in the light most favorable to Olivas—as Rule 12(b)(6) requires—the timeline easily supports an inference of retaliation.

2.4.   This Court should reverse for plain error.

The dismissal contradicts well-established Fifth Circuit and Supreme Court pleading law. *Cicalese* and *Swierkiewicz* hold that a plaintiff need not plead a prima

---

[64]*Swierkiewicz*, 534 U.S. at 511–12.

20

facie case.[65] *Swanson*, *Strong*, *Lyons*, and *Gee* hold that close temporal proximity supplies the causal element. *Jenkins* holds that requesting an accommodation is protected activity. None of these cases is unsettled, and none was confronted by the magistrate judge's analysis. The dismissal effectively required Olivas to plead her case as if it were summary-judgment evidence (exact dates, exact words, exact recipients) rather than the "short and plain statement of the claim" Rule 8(a) requires. That was plain error.

The error affected substantial rights. The dismissal, entered *with prejudice* and without leave to amend, terminated Olivas's case in its entirety. That is the most direct possible impact on substantial rights.

Finally, even if any pleading deficiency could be identified, dismissal *with prejudice* was independently improper. This Court instructs that district courts "should generally afford a plaintiff at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiff[] advise[s] the court that [she is] unwilling or unable to amend in a manner that will avoid dismissal."[66] The defects identified by the magistrate judge,

---

[65] *Cicalese*, 924 F.3d at 767; *Swierkiewicz*, 534 U.S. at 511–12.

[66] *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329-30 (5th Cir. 2002).

e.g., a purported lack of specificity about the accommodation request and its precise date, are paradigmatically curable through amendment. Olivas could, for example, plead that the accommodation request occurred on a specific date, identify the precise words used, and add additional factual context. Refusing leave to amend before entering a final, with-prejudice dismissal compounded the underlying error.

## Conclusion

For the foregoing reasons, Appellant Angelica Olivas respectfully requests that this Court **reverse** the district court's judgment dismissing her ADA retaliation claim and **remand** for further proceedings consistent with this Court's opinion. In the alternative, Appellant requests that the dismissal be vacated and the matter remanded with instructions that Appellant be afforded an opportunity to amend her complaint.

Respectfully submitted,
/s/ Lane A. Haygood
**Lane A. Haygood**
SBN: 24066670
HAYGOOD LAW FIRM
620 N. Grant Ave., Suite 913
Odessa, Texas 79761
Telephone: (432) 279-0411
Fax: (432) 225-1062
E-mail: lane@haygoodlawfirm.com
*Attorney for Plaintiff–Appellant Angelica Olivas*

22

## CERTIFICATE OF SERVICE

I, Lane A. Haygood, hereby certify that on the date set forth below, one true and correct electronic copy of the foregoing Brief of Appellant was electronically served on lead counsel for Defendant–Appellee, Aaron M. Dorfner of Cotton, Bledsoe, Tighe & Dawson, P.C., at adorfner@cbtd.com, and on Monique Wimberly at mwimberly@cbtd.com, through the Court's CM/ECF electronic case-filing system.

/s/ Lane A. Haygood
**Lane A. Haygood**
Attorney for Angelica Olivas
Dated: May `0, 2026

## Certificate of Compliance

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

**1.** This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the brief exempted by Rule 32(f), this brief contains 3,693 words.

**2.** This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Matthew Butterick's Typography for Lawyers font pack: the serif font Equity Text A for body text, the sans-serif font Concourse T3 for subheadings, and the slab-serif font Advocate Slab C for major headings, in 14-point or greater typeface, except in the case of footnotes, which are sized in 12-point typeface.

/s/ Lane A. Haygood
**Lane A. Haygood**
Attorney for Angelica Olivas
Dated: May 10, 2026

24